## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEFFREY HESS, individually and on behalf of all others similarly situated,<br><br>       *Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>       *Defendant*. | Case No. 3:23-cv-50106<br><br>**Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

## Table of Contents

I.     Introduction.................................................................................................. 1

II.    Parties........................................................................................................... 1

III.   Jurisdiction and Venue................................................................................ 2

IV.   Facts............................................................................................................. 2

      A.     Gas stoves produce health-harming pollutants. ............................. 4

      B.     Defendant knows of this defect......................................................... 5

      C.     Safe alternative designs that would reduce the danger are available......................... 7

      D.     Defendant should have warned of the pollutant risk. ...................... 7

      E.     Defendant overcharges millions of consumers. .............................. 8

      F.     Plaintiff was misled and harmed by Defendant. ............................. 9

      G.    No adequate remedy at law............................................................. 10

V.     Class Action Allegations............................................................................ 10

VI.   Causes of Action. ...................................................................................... 12

VII.  Jury Demand. ............................................................................................. 20

VIII. Prayer for Relief........................................................................................ 20

## I.     Introduction.

1.     About 40% of American households use natural gas stoves. Many households use the stove daily to cook in the home.  Studies confirm however, that gas cooking has important risks.  Gas stoves "emit air pollutants… at levels the EPA and World Health Organization have said are unsafe and linked to respiratory illness, cardiovascular problems, cancer, and other health conditions."[1]  For example, gas stoves emit nitrogen oxides, which are "gases [that] can worsen asthma and other lung diseases."[2] This is true for all consumers, adults and children alike, but is especially risky for children. *Id.*  Children living in households with gas stoves are "42% more likely to have asthma."[3]

2.     This risk is avoidable; manufacturers can reasonably design gas stoves to mitigate the risk of pollutants.  Manufacturers also can—and should—disclose the risk of pollutants to consumers, who can then make an informed choice about whether to buy a gas stove or an electric stove (which does not carry the same risk).

3.     Defendant Samsung Electronics America, Inc. makes, sells, distributes, and markets household appliances, including Samsung brand gas stoves, ovens and ranges. Plaintiff purchased a gas stove made by Defendant.  Plaintiff believed that the product was free from defects, and he did not know that gas cooking has significant pollutant risks. Had he known of the risks of pollutants from the gas stove, he would not have purchased it.

4.     Plaintiff brings this case for himself and for other consumers who purchased Defendant's gas stoves, ovens, and range products.

## II.     Parties.

5.     Plaintiff Jeffrey Hess is domiciled in Dekalb, Illinois.

6.     The proposed class and subclass (identified below) include citizens of all states.

---

[1] https://www.bloomberg.com/news/articles/2023-01-09/us-safety-agency-to-consider-ban-on-gas-stoves-amid-health-fears

[2] https://www.consumerreports.org/appliances/indoor-air-quality/is-your-gas-range-a-health-risk-a6971504915/

[3] https://www.health.harvard.edu/blog/have-a-gas-stove-how-to-reduce-pollution-that-may-harm-health-202209072811

7.    Defendant Samsung Electronics America Inc. is a New York corporation with its principal place of business in Ridgefield Park, New Jersey.

8.    Defendant makes, distributes, sells, and markets gas stoves, ovens, and range products (including under the brand names Samsung and Dacor), and has done so throughout any applicable statute of limitations period.

**III.    Jurisdiction and Venue.**

9.    This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

10.    This Court has personal jurisdiction over Defendant. Defendant does business in Illinois.  It advertises and sells its Products in Illinois, and serves a market for its Products in Illinois. Due to Defendant's actions, its Products have been marketed and sold to consumers in Illinois, and harmed consumers in Illinois. Plaintiff's claims arise out of Defendant's contacts with this forum. Due to Defendant's actions, Plaintiff purchased one of Defendant's Products in Illinois, and was harmed in Illinois.

11.    Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d). Defendant would be subject to personal jurisdiction in this District if this District were a separate state. Defendant advertises and sells its Products to customers in this District, serves a market for its Products in this District, and Plaintiff's claims arise out of Defendant's contacts in this forum. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred here.

**IV.    Facts.**

12.    About 40% of American households use natural gas stoves.[4] Many households use the stove daily to cook in the home.

---

[4] https://www.washingtonpost.com/business/energy/biden-isnt-coming-for-your-gas-stove-states-are/2023/01/13/12353d1e-9353-11ed-90f8-53661ac5d9b9_story.html

13.     Defendant makes, markets, distributes, and sells residential gas stoves, gas ranges, and gas ovens ("Defendant's Products" or "Products"), including under brand names such as Samsung and Dacor.  Some examples of Defendant's Products are shown below:[5]





14.     Defendant sells its products specifically for home use, and markets to consumers for home use.  In fact, the only intended use for Defendant's Products is for cooking inside the home.

_____

[5] https://www.samsung.com/us/home-appliances/ranges/gas/

**A.      Gas stoves produce health-harming pollutants.**

15.      Studies have confirmed that gas stoves harm the health of the households that use it.[6] Gas stoves "emit air pollutants such as nitrogen dioxide, carbon monoxide and fine particulate matter at levels the EPA and World Health Organization have said are unsafe and linked to respiratory illness, cardiovascular problems, cancer, and other health conditions."[7]

16.      In particular, nitrogen oxides (sometimes written as NOx or NO2),[8] are hazardous to human health.  A "study published by researchers at Stanford calculated that emission of nitrogen dioxide from certain gas burners or ovens rose above the standard set for outdoors by the Environmental Protection Agency (EPA) within a few minutes."[9]

17.      Further, "EPA research also linked long-term NO2 exposure to cardiovascular effects, diabetes, poorer birth outcomes, premature mortality, and cancer."[10] It is also linked to "reduced cognitive performance, especially in children." *Id.*  "[E]arly-life exposure to air pollution from indoor gas appliances may be negatively associated with neuropsychological development through the first 4 years of life, particularly among genetically susceptible children." *Id.*  "The gases can worsen asthma and other lung diseases."[11] "In short, research shows that even low levels of NO2 exposure are dangerous, especially to the vulnerable."[12]

18.      "Yet…homes with gas stoves have around 50 percent, ranging up to over 400

---

[6] https://www.consumerreports.org/appliances/indoor-air-quality/is-your-gas-range-a-health-risk-a6971504915/

[7] https://www.bloomberg.com/news/articles/2023-01-09/us-safety-agency-to-consider-ban-on-gas-stoves-amid-health-fears

[8] The term NOx is a common term for nitrogen oxides that include nitric oxide (NO) and nitrogen dioxide (NO2). https://www.encyclopedia.com/earth-and-environment/ecology-and-environmentalism/environmental-studies/nox-nitrogen-oxides

[9] https://www.health.harvard.edu/blog/have-a-gas-stove-how-to-reduce-pollution-that-may-harm-health-202209072811

[10] https://www.vox.com/energy-and-environment/2020/5/7/21247602/gas-stove-cooking-indoor-air-pollution-health-risks

[11] https://www.consumerreports.org/appliances/indoor-air-quality/is-your-gas-range-a-health-risk-a6971504915/

[12] https://www.vox.com/energy-and-environment/2020/5/7/21247602/gas-stove-cooking-indoor-air-pollution-health-risks

percent, higher levels of NO2 than homes with electric stoves."[13] Concentrations of NO2 emissions from gas stoves can exceed US outdoor pollution standards several times over when conducting common cooking tasks like boiling water, baking a cake, roasting meat, and frying bacon with a gas stove. *Id.* Thus, children living in households with gas stoves are "42% more likely to have asthma."[14] A recent study "found that 12.7%...of current childhood asthma in the US is attributable to gas stove use."[15] This is a level that is "similar to the childhood asthma burden attributed to secondhand smoke exposure."[16] Data shows that, "the higher the nitrogen dioxide level, the more severe the asthma symptoms in children and adults."[17]

19.     For these reasons, the American Medical Association adopted a resolution "recogniz[ing] the association between the use of gas stoves, indoor nitrogen dioxide levels and asthma," and committed to informing "members and, to the extent possible, health care providers, the public, and relevant organizations that use of a gas stove increases household air pollution and the risk of childhood asthma and asthma severity."[18]

**B.     Defendant knows of this defect.**

20.     Defendant is aware that its Products emit health-harming pollutants.

21.     Since the 1980s, the natural gas industry—of which Defendant is a constituent—has worried that the US Consumer Product Safety Commission would regulate gas stove emissions due to indoor air quality concerns.[19]

---

[13] https://www.vox.com/energy-and-environment/2020/5/7/21247602/gas-stove-cooking-indoor-air-pollution-health-risks
[14] https://www.health.harvard.edu/blog/have-a-gas-stove-how-to-reduce-pollution-that-may-harm-health-202209072811
[15] IJERPH | Free Full-Text | Population Attributable Fraction of Gas Stoves and Childhood Asthma in the United States (mdpi.com)
[16] IJERPH | Free Full-Text | Population Attributable Fraction of Gas Stoves and Childhood Asthma in the United States (mdpi.com)
[17] Have a gas stove? How to reduce pollution that may harm health - Harvard Health
[18] https://policysearch.ama-assn.org/policyfinder/detail/gas%20stove?uri=%2FAMADoc%2Fdirectives.xml-D-135.964.xml; https://publicinterestnetwork.org/updates/update-ama-moves-forward-resolution-gas-stove-pollution/
[19] https://www.npr.org/2023/02/04/1149736969/gas-stove-makers-have-a-pollution-solution-theyre-just-not-using-it; https://www.sciencenews.org/archive/cleaner-cooking-gas

22.  This is because "[s]cientists have long known that gas stoves emit pollutants that irritate human airways and can cause or exacerbate respiratory problems."[20] "[S]tudies dating back decades have shown harmful effects from the NO2 in gas cooking stoves."[21]

23.    In 1986, a report by the Clean Air Scientific Advisory Committee of the U.S. Environmental Protection Agency stated, "Health effects data from epidemiological studies in gas stove homes suggest that young children are at increased risk of respiratory symptoms; and infection from exposures to elevated concentrations of N02. Other groups at risk to N02 exposures are asthmatics and bronchitics."[22] It further warned, "Human epidemiologic studies suggest that exposure to nitrogen dioxide may lead to increased respiratory illness rates among children." *Id.* at 6.

24.    Subsequent studies have confirmed the harmful effects of pollutants from gas stoves.  "In a 1992 meta-analysis of studies on this topic, scientists at the EPA and Duke University found that nitrogen dioxide exposure that is comparable to that from a gas stove increases the odds of children developing a respiratory illness by about 20 percent."[23]  "A 2013 meta-analysis of 41 studies found that gas cooking increases the risk of asthma in children and that NO2 exposure is linked with currently having a wheeze." *Id.*  And "a study published last December found that 12.7 percent of childhood asthma cases in the U.S. can be attributed to gas stove use." *Id.*

25.    Like other makers of gas stoves, Defendant monitors and keeps track of research on the health effects of its products.  This is diligence that large companies like Defendant routinely do when selling a consumer product.   Defendant is aware of the fact that its Products emit harmful pollutants.  It is further aware that use of gas stoves increases the rates of respiratory illness in adults and children.

---

[20] https://www.scientificamerican.com/article/the-health-risks-of-gas-stoves-explained/
[21] https://www.scientificamerican.com/article/the-health-risks-of-gas-stoves-explained/
[22] Report of the Clean Air Scientific Advisory Committee, May 9, 1986, at 5.
[23] https://www.scientificamerican.com/article/the-health-risks-of-gas-stoves-explained/

**C.     Safe alternative designs that would reduce the danger are available.**

26.     Further, the harms could have been avoided through safe, reasonable alternative designs.  Alternative gas stove designs that "reduce harmful emissions, without sacrificing heat, have been available for decades."[24]  As one example, the "jet-powered infrared gas-range burner," developed in the 1980s, "consumed about 40% less natural gas to reach cooking temperatures and emitted 40% less nitrogen oxides."[25] Another design proposed in the 1980s was the use of a flame insert, which cuts the NOx emissions "more than 40 percent" when the burner is turned on high, and even more at low burner settings.[26]

27.     Despite this, Defendant failed to use an alternative design to avoid these harms and reduce harmful pollutants from gas stoves.

**D.     Defendant should have warned of the pollutant risk.**

28.     While Defendant is aware of the harmful health effects of gas cooking, everyday consumers are unaware of these risks.  Consumers shopping for a new oven, range, or stove have very little information about the health risks of gas appliances.

29.     Consumers remain unaware because nothing on Defendant's packaging, instructions, or warning labels suggest that the gas stoves regularly emit pollutants that are harmful to human health. Further, the labels and warnings do not mention any risk of nitrogen oxides.

30.     Defendant sold its Products for cooking inside the home, while omitting any warning of the serious defect due to the harmful emissions.  Defendant knew of the defect, but actively concealed it.  Defendant should have, but did not, warn consumers of the fact that its Products emit harmful nitrogen oxides and pollutants when used for cooking. These warnings could have been included on the packaging, stickers, or instruction manual for the product.  But Defendant did not include any such warning.

---

[24] https://www.npr.org/2023/02/04/1149736969/gas-stove-makers-have-a-pollution-solution-theyre-just-not-using-it
[25] https://www.npr.org/2023/02/04/1149736969/gas-stove-makers-have-a-pollution-solution-theyre-just-not-using-it
[26] https://www.sciencenews.org/archive/cleaner-cooking-gas

31.     Defendant had a duty to warn of the defect.  The defect was an unreasonable safety hazard.  Defendant could have avoided this risk by using available design-arounds.  In addition, the defect was central to the gas stove's function (i.e. its safety for use cooking inside the home).  Defendant had exclusive knowledge of the defect. Defendant actively concealed the defect from consumers by failing to disclose it.  Defendant also made partial representations that are misleading because other material facts were not disclosed.  For example, it warned of some risks of the Products (e.g., it included extensive warnings about fire), but failed to warn that the Products emit harmful pollutants like nitrogen oxide.  This led consumers to believe that there was no such risk.

**E.     Defendant overcharges millions of consumers.**

32.     If Defendant disclosed the truth— that is, that its Products emit harmful pollutants, the price of its Products would fall dramatically.

33.     For example, a recent study showed that consumer demand for gas stoves falls as consumers become informed of the harms of gas stoves. Forty-six percent of gas-stove owning adults were interested in replacing their gas stoves after being informed of the study showing the link between gas stove pollution and childhood asthma.[27]

34.     If consumers knew the truth, demand for Defendant's Products would drop, and Defendant could not sell their Products at current prices.

35.     In addition, the defective design of gas stoves, ranges, and ovens reduces their value.  Consumers pay for a product that is safe for home cooking, but receive a less valuable product—one with a defective design that carries significant (and undisclosed) air pollution risks.

---

[27] https://morningconsult.com/2023/01/31/natural-gas-stove-bans-remain-divisive/

**F.     Plaintiff was misled and harmed by Defendant.**

36.     On May 21, 2021, Jeffrey Hess purchased a Samsung gas stove from Home Depot online while living in Dekalb, Illinois.  The stove had the model number of NX60T8111SG.[28]



37.     In purchasing the item, Mr. Hess relied on the representations on the marketing materials and online product page disclosing risks.  The marketing materials and online product page did not disclose or warn that the product emitted harmful pollutants, such as nitrogen oxides.  Thus, at the time of purchase, Plaintiff was unaware that the product emitted harmful pollutants such as nitrogen oxide.

38.     Plaintiff purchased Defendant's Product on the assumption that using the Product would not expose him to a significant air pollutant risk. Plaintiff would not have purchased

---

[28] *See* https://www.samsung.com/us/home-appliances/ranges/gas/6-0-cu-ft-front-control-slide-in-gas-range-in-black-stainless-steel-nx60t8111sg-aa/

Defendant's Product had he known that it emitted harmful pollutants like nitrogen oxide.

39.     As a result, Plaintiff suffered injury in fact when he: (a) spent money to purchase a Product he would not otherwise have purchased absent Defendant's misconduct; (b) overpaid for the Product due to Defendant's misconduct; and (c) paid for a defective product that, in truth, is worth less than he paid for it.

40.     Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary. Plaintiff likes Defendant's Products, and would purchase Defendant's Products in the future if the Product was redesigned to avoid emitting harmful pollutants. He faces an imminent risk of harm, however, because he cannot rely on representations that the Product is safe for cooking inside the home or the absence of any pollutant warning. Absent injunctive relief, Defendant may continue to advertise, promote, and sell the Products while representing that it is safe, and without warning the public about the health risks.

### G.     No adequate remedy at law.

41.     Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law.

42.     The remedies at law available to Plaintiff are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

## V.     Class Action Allegations.

43.     Plaintiff brings certain claims on behalf of the proposed class of:

- Nationwide Class: all persons who purchased Defendant's Products while living in the United States during the applicable statute of limitations (the "Nationwide Class"); and

- Illinois Subclass: all persons who, while living in the state of Illinois, purchased Defendant's Products during the applicable statute of limitations (the "Illinois Subclass").

45.     The following people are excluded from the proposed Class and Subclass: (1) any

Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

44.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

***Numerosity & Ascertainability.***

45.     The proposed class contains members so numerous that separate joinder of each member is impractical.  There are tens or hundreds of thousands of class members.  The precise number of class members is unknown to Plaintiff at this time.

46.     Members of the proposed class can be identified through public notice.

***Predominance of Common Questions.***

47.     There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

(1) Whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

(2) Whether Defendant's conduct was unfair and/or deceptive;

(3) Whether Defendant breached an implied warranty;

(4) What damages are needed to compensate Plaintiff and the proposed class; and

(5) Whether an injunction is necessary to prevent Defendant from continuing to market and sell the Products.

***Typicality & Adequacy.***

50.     Plaintiff's claims are typical of the other class members' claims.  Like other class

11

members, Plaintiff purchased Defendant's Product.

48.     The interests of the members of the proposed class and subclass will be adequately protected by Plaintiff and his counsel. Plaintiff's interests are aligned with, and do not conflict with, the interests of the members of the proposed class or subclass that they seek to represent. Moreover, Plaintiff has retained experienced and competent counsel to prosecute the class and subclass' claims.

### *Superiority.*

49.     The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that the same product is found unfit for its ordinary use for some proposed class members, but not for others.

50.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.     Causes of Action.

### Count I: Violation of Magnuson-Moss Warranty Act,

### 15 U.S.C. §2301, *et seq.*

### (on behalf of Plaintiff and the Nationwide Class)

52.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

53.     Plaintiff brings this count individually and for the Nationwide Class, or in the

alternative, the Illinois Subclass.

54.     Defendant's Products are each a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(1).

55.     Plaintiff and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(3).

56.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(4)-(5).

57.     As the manufacturer of residential gas stoves, Defendant impliedly warranted to Plaintiff and the class that the Products were of merchantable quality and were safe for their ordinary use in home cooking.

58.     As described in detail above, the Products, when sold and at all times after, were not in merchantable condition and were not fit for the ordinary purpose for which they are used. Specifically, the Products are inherently flawed given a defect in design making them emit health-harming pollutants when used to cook inside the home.  The defective design makes them unfit for ordinary purposes even when used correctly.

59.     In addition, Defendant's Products are not adequately labeled because they fail to disclose the risk of harmful pollutants.

60.     Thus, Defendant breached the implied warranty of merchantability in connection with the sale and distribution of the Products.

61.     Defendant also impliedly warranted to Plaintiff and the class that the Products were suitable and fit for a particular purpose.  Plaintiff and class members purchased Defendant's Products for the particular purpose of cooking inside the home.  As explained in detail above, Defendant knew, or had reason to know, that Plaintiff and class members were purchasing the Products for the particular purpose of cooking inside the home.

62.     Defendant markets itself as a knowledgeable and effective developer and purveyor of home appliances, such as gas stoves. As explained more fully above, Defendant knew, or had reason to know, that Plaintiff and class members would justifiably rely on

13

Defendant's particular skill and knowledge of home appliances in selecting or furnishing products suitable for home use. Plaintiff and class members did justifiably rely on Defendant's judgment and skill.

63.     Due to the defect in the Products, the Products are not suitable for their intended purpose.

64.     Defendant's breach of implied warranties has deprived Plaintiff and class members of the benefit of their bargain.

65.     Plaintiff and the class were foreseeable third-party beneficiaries of Defendant's sale of the Products. Defendant sells the Products to retailers for distribution and sale to consumers such as Plaintiff and class members.

66.     The amount in controversy of Plaintiff's individual claim exceeds $25. The amount in controversy of this action exceeds the sum value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

67.     Defendant has been afforded a reasonable opportunity to cure its breach, including after Plaintiff sent a notice letter informing Defendant of the breach.

68.     Defendant's breaches directly caused Plaintiff and class members harm. Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Defendant's Products if they had known the truth, (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentation and omissions, or and/or (c) they received a product that was defective and thus less valuable than what they paid for.

## Count II: Breach of the Illinois Consumer Fraud and
## Deceptive Business Practices Act, 815 ILCS 505/2
### (on behalf of Plaintiff and the Illinois Subclass)

69.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

70.     Plaintiff brings this cause of action on behalf of himself and members of the

14

Illinois Subclass, seeking reasonable attorneys' fees, actual damages, and other relief.

71.     Defendant is a "person" as that term is defined in 815 ILCS 505/1(c).

72.     Plaintiff and the members of the Illinois Subclass are "consumers" as that term is defined in 815 LCS 505/1(e).

73.     Plaintiff and the Illinois Subclass purchased the Products in Illinois.

74.     The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

75.     Defendant participated in misleading, false, or deceptive acts that violated the Illinois statute. The conduct alleged in this Complaint constitutes unfair or deceptive methods of competition, and the conduct was undertaken by Defendant in transactions intended to result in reliance.  The conduct did result in, the sale of goods to consumers.

76.     As alleged more fully above, Defendant advertised its Products in a way that is misleading or is likely to deceive consumers. Defendant's statements and omissions led Plaintiff and other members of the Illinois Subclass to believe that its Products are safe and fit for ordinary use when cooking in the home, when in fact, the Products emit health-harming pollutants. Defendant also failed to warn of a material defect with the product. Defendant's representations and omissions concerning the Products' defect were misleading.  Defendant's representations and omissions were likely to deceive, and did deceive, a substantial portion of the public into believing that the product did not suffer from a defect.

77.     Even though Defendant was aware of a material defect— that the Products emitted health-harming pollutants including nitrogen dioxides—Defendant sold its Products without notifying customers of this defect.  Instead, Defendant omitted this information, and

intended that consumers would rely on the omission. Plaintiff and the Subclass relied on Defendant's silence, and purchased Defendant's Products.

78.     As alleged above, Defendant's representations and omissions are unfair. They offend public policy, are immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to consumers.

79.     As alleged above, Defendant's representations and omissions were willful and knowing.

80.     Defendant's representations and omissions occurred in the conduct of trade and commerce affecting the people of the State of Illinois.

81.     Defendant's representations and omissions were material. As alleged in detail above, these representations were important to consumers and affected their choice to purchase the Products. And, as alleged in detail above, these representations were likely to mislead, and did mislead, reasonable consumers.

82.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased the Products if they had known of the defect, (b) they overpaid for the Products because the Products are sold at a price premium due to Defendant's misleading representations and omissions, or (c) they received a product that was defective and thus less valuable than what they paid for.

83.     Plaintiff and the Subclass seek actual damages, an injunction, reasonable attorneys' fees, expenses, and all other available relief.

### Count III: Breach of Implied Warranties

### (on behalf of Plaintiff and the Illinois Subclass)

84.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in Sections I-IV as though fully set forth herein.

85.     Plaintiff brings this count individually and for the Illinois Subclass.

***Implied Warranty of Merchantability***

86.     The Uniform Commercial Code § 2-314 states that "a warranty that [] goods shall

be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." "Merchantable" goods must be "fit for the ordinary purposes for which the goods are used."

87.    Defendant is and was, at all relevant times, a merchant with respect to home appliances, and with respect to residential Products in particular.  Defendant's Products each constitutes a "good" under the UCC.

88.    Plaintiff and Subclass members purchased Defendant's Products.

89.    As the manufacturer of residential gas stoves, Defendant impliedly warranted to Plaintiff and the Subclass that the products were of merchantable quality and were safe for their ordinary use in home cooking.  In fact, as described in detail above, the products, when sold and at all times after, were not in merchantable condition and were not fit for the ordinary purpose for which they are used.  Specifically, the Products are inherently flawed given a defect in design making them emit health-harming pollutants when used to cook inside the home.  The defective design makes them unfit for ordinary purposes even when used correctly.  In addition, Defendant's Products are not adequately labeled because they fail to disclose the risk of harmful pollutants.

90.    Thus, Defendant breached the implied warranty of merchantability in connection with the sale and distribution of the Products.

91.    Plaintiff and the Subclass were foreseeable third-party beneficiaries of Defendant's sale of the Products.  Defendant sells the Products to retailers for distribution and sale to consumers such as Plaintiff and Subclass members.

92.    Defendant's breach directly caused Plaintiff and Subclass members harm. Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Defendant's Products if they had known the truth, (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentation and omissions, or and/or (c) they received a product that was defective and thus less valuable than what they paid for.

17

*Implied Warranty of Fitness*

93.     The Uniform Commercial Code § 2-315 states that where a seller "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

94.      Plaintiff and Subclass members purchased Defendant's Products for the particular purpose of cooking inside the home.

95.     As explained in detail above, Defendant knew, or had reason to know, that Plaintiff and Subclass members were purchasing the Products for the particular purpose of cooking inside the home.

96.     Defendant markets itself as a knowledgeable and effective developer and purveyor of home appliances, such as gas stoves.

97.     As explained more fully above, Defendant knew, or had reason to know, that Plaintiff and Subclass members would justifiably rely on Defendant's particular skill and knowledge of home appliances in selecting or furnishing products suitable for home use.

98.     Plaintiff and Subclass members did justifiably rely on Defendant's judgment and skill.

99.     Due to the defect in the Products, the Products are not suitable for their intended purpose.

100.    As a result of the breach, Plaintiff and the Subclass suffered economic harm and damage.  Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Defendant's Products if they had known the truth, (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentation and omissions, or and/or (c) they received a product that was defective and thus less valuable than what they paid for.

### Count IV: Fraudulent Omission

### (on behalf of Plaintiff and the Illinois Subclass)

101.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

102.    Plaintiff brings this count individually and for the Illinois Subclass.

103.    As alleged in detail above, Defendant made materially misleading omissions concerning the safety of its Products.  Defendant concealed information about the harmful pollutants emitted by its Products.

104.    In deciding to purchase consumer products from Defendant, Plaintiff and the Subclass reasonably relied on Defendant's omissions to form the mistaken belief that the Products did not pose a significant pollutant risk.

105.    As alleged in detail above, Defendant's fraudulent conduct was knowing and intentional.  The omissions made by Defendant were intended to induce and actually induced Plaintiff and Subclass members to purchase the Products.  Plaintiff would not have purchased the products had he known of the defect.  Subclass-wide reliance can be inferred because Defendant's omissions were material, i.e., a reasonable consumer would consider them important to their purchase decision.

106.    As alleged in detail above, Defendant had a duty to disclose the defect.

107.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's fraudulent omissions because (a) they would not have purchased the Products if they had known the Products were unsafe and unfit for use; (b) they overpaid for the Products because the Products are sold at a price premium due to Defendant's misleading representations and omissions, or (c) they received a product that was defective and thus less valuable than what they paid for.

108.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to

19

deter such conduct in the future, which amount is to be determined according to proof.

## Count VIII: Quasi-contract

### (on behalf of Plaintiff and the Illinois Subclass)

109.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

110.     Plaintiff brings this count individually and for the Illinois Subclass.

111.     Plaintiff and Subclass members conferred a tangible and material economic benefit upon Defendant by purchasing the Products.

112.     In exchange for the purchase price, Defendant provided a defective product, without a reasonable warning. Defendant knew and appreciated the benefit they incurred from consumers purchasing Products.

113.     Thus, Defendant is aware of, and has retained, the unjust benefit conferred upon them by Plaintiff and the Subclass members.

114.     Defendant received a direct and unjust benefit, at the Plaintiff's and the Subclass's expense.

115.     Plaintiff and the Subclass seek restitution.

**VII.    Jury Demand.**

116.     Plaintiff demands a jury trial on all issues so triable.

**VIII.   Prayer for Relief.**

117.     Plaintiff seeks the following relief individually and for the proposed class and subclass:

- An order certifying the asserted claims, or issues raised, as a class action;
- An order appointing Plaintiff as representative for the Nationwide Class and each Subclass, and appointing their counsel as lead counsel for the classes;
- A judgment in favor of Plaintiff and the proposed classes;
- Damages, treble damages, statutory damages, and punitive damages where applicable;

- Restitution;

- Disgorgement, and other just relief;

- An order awarding Plaintiff and all other class members damages in an amount to be determined at trial for the wrongful acts of Defendant;

- Pre- and post-judgment interest on all amounts awarded;

- Injunctive relief as pleaded or as the Court may deem proper;

- Reasonable attorneys' fees and costs, as allowed by law;

- Punitive damages; and

- Any additional relief that the Court deems reasonable and just.

Dated: March 27, 2023

Respectfully submitted,

By: */s/ Jonas Jacobson*

Jonas B. Jacobson (Cal. Bar No. 269912)*
jonas@dovel.com
Christin Cho (Cal Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

*Generally Admitted